**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| RAUL J. STEVENS, | : |
| Plaintiff, | : Civ. Action No. 12-3011 (RMB) |
| v. | : OPINION |
| DONNA ZICKEFOOSE, et al. | : |
| Defendants. | : |

APPEARANCES:

Deepa J. Zavatsky, Esq.
Reed Smith LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, NJ 08540
    Counsel for Plaintiff

Mark A. Petraske, Esq.
Buckley Theroux Kine & Petraske, LLC
932 State Road
Princeton, NJ 08540
    Counsel for Defendant Denise M. Nugent,
    as Executrix of the Estate of Dennis Nugent, M.D.

**BUMB**, District Judge

    Plaintiff Raul J. Stevens, a prisoner incarcerated in FCI Fort Dix, in Fort Dix, New Jersey, filed his Third Amended Complaint ("TAC") in this action on November 9, 2015. (TAC, ECF. No. 114.) Stevens alleged Defendant Dr. Dennis Nugent, an urologist, misdiagnosed him with benign prostate hyperplasia,

1

failed to make a differential diagnosis, performed an unnecessary Transurethral Needle Ablation ("TUNA") procedure on him without his informed consent, and refused to stop the procedure when Plaintiff complained of severe pain.

This matter comes before this Court upon the motion for summary judgment by Denise M. Nugent as Executrix of the Estate of Dennis Nugent, M.D. (ECF No. 121.) Defendant contends Plaintiff's malpractice claims must be dismissed because Plaintiff failed, under New Jersey law, to obtain the requisite Affidavit of Merit and expert report from an urologist. (Def's Brief, ECF No. 121-1.)

Plaintiff opposed the motion for summary judgment. (Pl's Mem. of Law in Opp. to Mot. for S.J. by Defendant Denise M. Nugent as Executrix of the Estate of Dennis Nugent, M.D. ("Pl's brief," ECF No. 130.) He argues New Jersey law does not require him to obtain an Affidavit of Merit or expert report from an urologist because his malpractice claims of failure to provide a differential diagnosis, lack of informed consent, and failure to assure properly functioning anesthesia, are standards of general medical care not urological care. Defendant Nugent filed a reply brief in support of the motion for summary judgment ("Def's Reply", ECF No. 133.)

This Court has considered the pleadings, motions, briefs and supporting documents, and will decide the motion on the

2

papers, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons explained below, the Court will grant Defendant's motion for summary judgment in part and deny it in part.

I. Statement of Undisputed Material Facts

Plaintiff filed this action on May 21, 2012, alleging medical malpractice and other claims against Dr. Nugent. (Statement of Undisputed Material Facts, ECF No. 130-1, ¶1.) Defendant Nugent's Answer to the Second Amended Complaint contained a demand for an Affidavit of Merit pursuant to N.J.S.A. 2A:53A-26 *et seq.* (Id., ¶9.) On March 3, 2015, Plaintiff filed the Affidavit of Merit, supporting Plaintiff's malpractice claim against Dr. Nugent, by Dr. Ankush K. Bansal, who is board certified in Internal Medicine by the American Board of Internal Medicine. (Id., ¶10.) Dr. Bansal also authored an expert report discussing the care Dr. Nugent provided to Plaintiff. (Id., ¶16.)

Dr. Nugent was a board certified urologist. (Id., ¶11.) Dr. Bansal is not board certified in urology, and he is not trained to do urological procedures. (Id., ¶21, 22, 23.)

After evaluating Plaintiff for urinary symptoms including urinary frequency, nocturia, diminished force of urinary stream, hematuria and other non-urological complaints, Dr. Nugent

3

recommended and later performed a TUNA procedure[1] on Plaintiff in 2009. (Id., ¶18.)

II. DISCUSSION

  A. Summary Judgment Standard

Summary Judgment is proper where the moving party "shows there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999). The moving party has the burden to show there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by citing materials in the record, including depositions, documents, affidavits or declarations or other materials. Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be based on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "If a party fails to properly support an assertion of fact . . . the

---

[1] "Transurethral needle ablation (TUNA) is an outpatient procedure to treat urinary symptoms caused by an enlarged prostate, a condition known as benign prostatic hyperplasia (BPH). This procedure is also called radiofrequency ablation or RF therapy." Available at http://www.mayoclinic.org/tests-procedures/tuna/basics/definition/prc-20020196

4

court may . . . grant summary judgment . . . ." Fed. R. Civ. P. 56(e).

In determining whether there is a genuine dispute of a material fact, the court must view the facts in the light most favorable to the non-moving party and make all reasonable inferences from those facts. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A fact raises a genuine issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> B. Whether Plaintiff Obtained an Appropriate Affidavit of Merit as Required to Pursue a Medical Malpractice Claim; and Whether Plaintiff's Expert is Qualified to Offer an Expert Opinion Against Defendant Nugent Pursuant to N.J.S.A. 2A:53A-41.

In New Jersey an Affidavit of Merit is required in certain actions against licensed persons. N.J.S.A. 2A:53A-27 provides:

> In any action for damages for personal injuries . . . resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60

5

>days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
>In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c. 17 (C.2A:53A-41). . . .

N.J.S.A. 2A:53A-41 requires:

>In an action alleging medical malpractice, a person shall not give expert testimony or execute an affidavit pursuant to the provisions of P.L.1995, c. 139 (C.2A:53A-26 et seq.) on the appropriate standard of practice or care unless the person is licensed as a physician or other health care professional in the United States and meets the following criteria:
>
>a. If the party against whom or on whose behalf the testimony is offered is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association and the care or treatment at issue involves that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association, the person providing the testimony shall have specialized at the time of the occurrence that is the basis for the action in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, as the party against whom or on whose behalf the testimony is offered, and if the person against whom or on whose behalf the testimony is being offered is board certified and the care or treatment at issue involves that board specialty or subspecialty recognized by the American Board of Medical Specialties or the American

6

Osteopathic Association, the expert witness shall be:

(1) a physician credentialed by a hospital to treat patients for the medical condition, or to perform the procedure, that is the basis for the claim or action; or

(2) a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association who is board certified in the same specialty or subspecialty, recognized by the American Board of Medical Specialties or the American Osteopathic Association, and during the year immediately preceding the date of the occurrence that is the basis for the claim or action, shall have devoted a majority of his professional time to either:

(a) the active clinical practice of the same health care profession in which the defendant is licensed, and, if the defendant is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, the active clinical practice of that specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

(b) the instruction of students in an accredited medical school, other accredited health professional school or accredited residency or clinical research program in the same health care profession in which the defendant is licensed, and, if that party is a specialist or subspecialist recognized by the American Board of Medical Specialties or the American Osteopathic Association, an accredited medical school, health professional school or accredited residency or clinical research program in the same specialty or subspecialty recognized by the American Board of Medical Specialties or the American Osteopathic Association; or

>>(c) both.

>>. . .

"[A]n expert must have the same type of practice and possess the same credentials, as applicable, as the defendant health care provider, unless waived by the court." Nicholas v. Mynster, 213 N.J. 463, 479 (2013) (quoting Assembly Health & Human Services Committee, Statement to Assembly Bill No. 50 at 20 (Mar. 4, 2004)). When a physician is a specialist and the basis of the malpractice action "involves" the physician's specialty, the challenging expert must practice in the same specialty. See Buck [v. Henry,] 207 N.J. [377,] 391 [2011]. A medical expert must be a specialist in the same field in which the defendant physician specializes; there are no exceptions to that requirement other than the waiver provision of N.J.S.A. 2A:53A–41(c). . . . Id. at 481-82.

In determining whether an affidavit of merit satisfies the statute:

> the first inquiry must be whether a physician is a specialist or general practitioner. If the physician is a specialist, then the second inquiry must be whether the treatment that is the basis of the malpractice action involves the physician's specialty. When the treatment "involves" the physician's specialty, the equivalency requirements apply, otherwise the specialist is subject to the same affidavit requirements as if he were a general practitioner.

8

Buck, 207 N.J. at 391.

Under the statute, the New Jersey Supreme Court looks to whether "the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession." Couri v. Gardner, 173 N.J. 328, 340 (2002).

In addition to the Affidavit of Merit, to establish a medical malpractice claim in New Jersey, "a plaintiff must present expert testimony establishing (1) the applicable standard of care, (2) deviation from that standard of care; and (3) that the deviation proximately caused the injury." Gardner v. Pawliw, 150 N.J. 359, 375 (1997). If Plaintiff does not present expert testimony to establish the relevant standard of care, breach of that standard, and causal connection between the breach and the Plaintiff's injury, "the case is not sufficient for determination by the jury." Rosenberg v. Tavorath, 352 N.J. Super. 385, 399 (N.J. Super. Ct. App. Div. 2002) (citations omitted).

Defendant Nugent argues that the basis of this malpractice action involves a condition and treatment within the specialty of urology, in which Dr. Nugent was board certified. (Id. at 11.) Therefore, Plaintiff's malpractice claims should be dismissed with prejudice because Plaintiff failed to provide an Affidavit of Merit from an appropriately licensed professional,

9

as required by New Jersey law. (Def's Brief, ECF No. 121-1 at 7-8.) Plaintiff's expert, Dr. Bansal is board certified in internal medicine but not in urology. (Id.)

Plaintiff contends his claims against Dr. Nugent "relate solely to duties that surround every medical professional, regardless of specialty." (Pl's Brief, ECF No. 130 at 13.) For instance, he asserts that failure to conduct a differential diagnosis is a requirement of general medical practice. (Id. at 14.) Additionally, every physician has a duty to obtain informed consent for treatment. (Id. at 16.) Finally, it is a general medical duty "and simple common sense" . . . "that a doctor must not continue a procedure after the patient shows signs of pain or distress." (Id. at 17.)

    1.    Failure to Conduct a Differential Diagnosis

Applying the first step of the two-step inquiry announced in Buck, there is no question that Dr. Nugent is a urologist. The second inquiry is whether the treatment that is the basis of the malpractice action involves the physician's specialty.

The TUNA procedure is the basis for this malpractice action. Plaintiff claims that Dr. Nugent failed to rule out other causes or exhaust other treatments for his urinary symptoms before performing the procedure. This requires proof of the following: (1) what other conditions an urologist would investigate before performing the TUNA, (2) the harm that might

10

result from not investigating other causes before performing the TUNA; (3) what other treatments were available for Plaintiff's symptoms; and (4) why such treatments are preferable to the TUNA procedure.

The TUNA procedure is urological in nature. Therefore, New Jersey law required Plaintiff to have an Affidavit of Merit to bring his malpractice claim that Dr. Nugent failed to conduct a differential diagnosis before performing the TUNA procedure. Furthermore, to establish his claim, Plaintiff would be required to present expert testimony of an urologist regarding the proximate cause of Plaintiff's alleged injury of continued and increased urinary symptoms.

### 2.  Failure to Obtain Informed Consent

Plaintiff also claims Dr. Nugent failed to establish informed consent before doing the TUNA procedure. In the TAC, Plaintiff alleged he initially refused. (TAC, ECF No. 114, ¶77.) Dr. Nugent told Plaintiff "that if he underwent the TUNA procedure, his 'urinary stream would be as strong as that of a 20 year old.'" (Id., ¶269.) Plaintiff ultimately consented to the TUNA procedure because the Federal Defendants threatened that he would not be offered any other treatment if he refused the TUNA. (Id., ¶81.) Plaintiff alleges he was never informed of risks associated with the TUNA procedure, and he was not given

11

any written materials regarding the procedure. (Id., ¶¶100-103, 105.) He did not sign a written consent form. (Id., ¶106.)

When a plaintiff alleges failure to obtain informed consent, the action is for negligence rather than battery. Matthies v. Mastromonaco, 160 N.J. 26, 35 (1999). "In informed consent analysis, the decisive factor is . . . whether the physician adequately presents the material facts so that the patient can make an informed decision." Id. at 36. "[P]roof of a risk recognized by the professional community must come from a qualified expert." Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir. 2000).

To prove his claim, Plaintiff must present evidence of the risks of undergoing a TUNA procedure. A urologist is required to identify those risks. Therefore, under New Jersey law, Plaintiff was required to obtain an Affidavit of Merit from an urologist to substantiate his informed consent claim.

Failure to provide an Affidavit of Merit "shall be deemed a failure to state a cause of action." N.J.S.A. 2A:53A-29; see Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144 (2003) (failure to timely file the Affidavit of Merit will result in dismissal with prejudice.) Therefore, Plaintiff's claims that Dr. Nugent failed to conduct a differential diagnosis and failed to obtain informed consent before doing the TUNA procedure will be dismissed with prejudice. Additionally, Plaintiff's battery

12

claim against Dr. Nugent (TAC, ECF No. 114, ¶¶266-75) is based on lack of informed consent, and it will also be dismissed for failure to obtain an Affidavit of Merit from a urologist.

### 3. Failure to Stop Procedure When Anesthesia Failed

In the TAC, Plaintiff alleged:

> 108. Immediately before the procedure, Dr. Nugent administered an injection purporting to be a local anesthetic, allegedly to prevent Plaintiff from feeling pain during the procedure.
> . . .
>
> 110. Plaintiff continued to feel significant pain during the procedure, including an excruciating burning feeling within his stomach and colon.
>
> 111. As a result of this apparent failure of anesthesia, Plaintiff experienced agonizing pain during the TUNA procedure . . .
>
> 112. Plaintiff repeatedly requested in the middle of the procedure that the TUNA be stopped and that Dr. Nugent cease any further invasive action on his prostrate. Dr Nugent did not comply, and continued to act upon Plaintiff, stating that he was "almost done, almost there," and that there were just a few minutes more.

(TAC, ECF No. 114.)

There is a "common knowledge" exception to New Jersey's Affidavit of Merit requirement. Bender v. Walgreen Eastern Co., Inc., 399 N.J.Super 584, 590 (N.J. Super. Ct. App. Div. 2008). "The doctrine . . . is appropriately invoked when the 'carelessness of the defendant is readily apparent to anyone of

13

average intelligence and ordinary experience.'" Id. (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 160 N.J. 454, 469-70, 734 A.2d 778 (1999) (quoting Rosenberg ex rel. Rosenberg v. Cahill, 99 N.J. 318, 325, 492 A.2d 371 (1985))." Id. "The 'common knowledge' exception recognized in Hubbard [ex rel Hubbard v. Reed, 168 N.J. 387 (2001)] applies only 'when an expert will not be called to testify 'that the care, skill or knowledge ... [of the defendant] fell outside acceptable professional or occupational standards or treatment practices.'" 168 N.J. at 390, 774 A.2d 495 (quoting N.J.S.A. 2A:53A-27)." Bender, 399 N.J.Super at 592.

Plaintiff contends that it is "simple common sense and knowledge, that a doctor must not continue a procedure after the patient shows signs of pain or distress." (Pl's Brief, ECF No. 130 at 17.) The Court agrees, and will not dismiss this claim for failure to obtain an Affidavit of Merit from an urologist.

    C.    <u>Whether Plaintiff's Claims for Emotional Distress and Deliberate Indifference under Bivens[2] Require Expert Testimony Under New Jersey Law</u>

The parties disagree as to whether the New Jersey Affidavit of Merit statute applies to Plaintiff's claims of battery,

---

[2] In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court held that a plaintiff may bring a federal cause of action for damages against a federal actor for violation of the Fourth Amendment.

14

emotional distress and deliberate indifference. (Pl's Brief, ECF No. 130 at 25, 42.)

### 1. Deliberate Indifference

Plaintiff alleged Dr. Nugent violated his Eighth Amendment Right to be free from Cruel and Unusual Punishment. (TAC, ECF No. 114, ¶¶242-255). "Compliance with the affidavit of merit statute is not a prerequisite for a federal civil rights action against a doctor who is deliberately indifferent to his or her patient's medical needs." Hill Intern., Inc. v. Atlantic City Bod of Educ., 438 NJ Super 562, 591 (NJ Super Ct App. Div. Dec. 30, 2014). Thus, the Court will not grant summary judgment to Defendant Nugent for Plaintiff's failure to obtain the appropriate expert affidavit to support his constitutional claim.

### 2. Negligent and Intentional Infliction of Emotional Distress

In Count Four of the TAC, Plaintiff alleged Defendant Nugent's conduct, particularly in performing the TUNA without functioning anesthesia, amounted to intentional infliction of emotional distress. (TAC, ¶¶276-83.) In Count Five, Plaintiff alleged Dr. Nugent's negligent treatment foreseeably caused Plaintiff's increasing medical deterioration and shame and embarrassment from his uncontrollable symptoms. (TAC, ¶¶284-289.)

15

In <u>Couri v. Gardner</u>, the New Jersey Supreme Court announced:

> "[W]hen presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies. See <u>Hubbard</u>, <u>supra</u>, 168 N.J. at 390, 774 A.2d 495 (holding that an affidavit of merit is not required in "common knowledge" cases when an expert will not be called to testify " 'that the care skill or knowledge ... [of the defendant] fell outside acceptable professional or occupational standards or treatment practices'") (citing N.J.S.A. 2A:53A–27).

173 N.J. 328, 340 (2002).

As discussed above, Plaintiff's claim that Defendant Nugent continued to perform the TUNA procedure after Plaintiff asked him to stop because he was in agonizing pain is subject to the common knowledge exception of the Affidavit of Merit statute. Therefore, Plaintiff's intentional and negligent infliction of emotional distress claims based failing to stop the TUNA procedure will be allowed to proceed without an Affidavit of Merit from an urologist.

Plaintiff also alleged negligent infliction of emotional distress claim because Dr. Nugent failed to perform a

differential diagnosis for his symptoms and failed to try other treatment options before performing the TUNA procedure. This claim will require proof of deviation from a professional standard of care. Therefore, the Court will dismiss this claim for failure to obtain an Affidavit of Merit from a urologist. See Romano v. Brown, Civil No. 1:04-cv-4346(FLW), 2006 WL 2376913 (D.N.J. Aug. 16, 2006) (dismissing emotional distress claims where claims required expert testimony regarding treatment of HIV infection, and whether deviation in standard of care caused distress).

    D.    Whether Plaintiff Failed to Establish a Claim under the Eighth Amendment for Deliberate Indifference to a Serious Medical Need

Plaintiff alleges the following facts in support of his deliberate indifference claim. (Pl's Brief, ECF No. 130 at 40.) First, Dr. Nugent requested that Plaintiff have a neurological consultation before the TUNA procedure, but he conducted the potentially unnecessary procedure without ruling out a neurological cause of Plaintiff's symptoms. (Id. at 40-41.) Second, Dr. Nugent continued to perform the TUNA procedure after Plaintiff informed him that he was in agonizing pain and asked him to stop. (Id. at 41.)

Defendant Nugent replied that even if the TUNA procedure was not the proper choice to treat Plaintiff's urological symptoms and prostatic obstruction, performing the procedure did

17

not amount to deliberate indifference. (Def's Reply, ECF No. 133 at 12.) Regarding Plaintiff's claim that Dr. Nugent performed the TUNA without adequate anesthesia, Defendant argues this is a medical negligence claim that requires an expert opinion from a qualified expert. (Id.)

"[D]eliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994). Deliberate indifference is more than negligence. Id. at 835 (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" Estelle, 429 U.S. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)).

Deliberate indifference may be found when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." The deliberate indifference standard is met "when a doctor is 'intentionally inflicting pain on [a] prisoner[].'" Spruill v. Gillis, 372 F.3d 218, 235 (3d Cir. 2004) (quoting White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)).

To the extent that Plaintiff's deliberate indifference claim rests on allegations that Dr. Nugent misdiagnosed and

18

improperly treated his condition, the claim does not rise to the level of deliberate indifference. See Weigher v. Prison Health Services, 402 F. App'x 668, 670 (3d Cir. 2010) ("claim of misdiagnosis would sound in negligence as a malpractice suit, and does not constitute deliberate indifference"); Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (disagreement as to proper medical care does not support a claim of Eighth Amendment violation).

Plaintiff also alleged he complained of severe pain during the TUNA procedure and repeatedly asked Dr. Nugent to stop, but Dr. Nugent responded only by repeating that he was almost done. Accepting as true Plaintiff's allegation that he was in agonizing pain during the TUNA procedure caused by the failure of anesthesia, Plaintiff stated an Eighth Amendment claim against Dr. Nugent. See Spruill, 372 F.3d 218, 237 (3d Cir. 2004) (finding the plaintiff stated a deliberate indifference claim by alleging physician twisted his legs like a pretzel, after the plaintiff repeatedly told him the exam was causing increased pain); Glenn v. Barua, 252 F. App'x 493, 497 (3d Cir. 2007) (finding the plaintiff stated a deliberate indifference claim with allegation that his cast had broken and was poking into his leg and causing pain, but the doctor refused to do anything.)

IV.   CONCLUSION

For the reasons discussed above, in the accompanying Order filed herewith, the Court will grant Defendant Nugent's motion for summary judgment on Plaintiff's malpractice claims for: (1) failing to perform a differential diagnosis; (2) failure to obtain informed consent; (3) battery based on lack of informed consent; and (4) negligent infliction of emotional distress for misdiagnosis and performing the TUNA procedure. The Court will deny Defendant Nugent's motion for summary judgment on Plaintiff's claims of Eighth Amendment violation by deliberate indifference to his serious medical needs, and intentional and negligent infliction of emotional distress for failing to stop the TUNA procedure upon Plaintiff's request.

        s/Renée Marie Bumb
        **Renée Marie Bumb**
        **United States District Judge**

**Dated:** March 23, 2016